LEHAN, Judge.
We reverse the dismissal with prejudice of this wrongful death suit for medical malpractice. We disagree with the trial court's conclusion that the statute of repose, section 95.11(4)(b), Florida Statutes (1989), precludes the suit. We conclude that the court erred in ruling that the repose period had expired before there was notice of injury. No contention has been raised concerning the statute of limitations.
The complaint includes the following allegations. In 1980 a pigmented lesion, apparently a mole, was removed from the back of Christopher Nemeth, plaintiff’s husband. Biopsied tissue from the mole was given to the defendant pathologists for identification and evaluation. The defen *73 dants diagnosed the tissue sample as showing no more than a “hemangioma,” a benign tumor. Based upon that diagnosis, Mr. Nemeth’s physician took no further action in that regard. In 1988 Mr. Nemeth went to a hospital emergency room complaining of blurred vision, disorientation and vomiting. The slides of his 1980 biopsy were then reviewed and identified as showing that the mole had been a malignant melanoma. Mr. Nemeth was thereafter diagnosed as having a metastatic brain tumor which was directly attributable to the malignant melanoma and which caused his death. This suit was filed more than four years after the 1980 diagnosis which is alleged to have constituted malpractice.
We agree with plaintiffs that Lloyd v. North Broward Hospital District, 570 So.2d 984 (Fla. 3d DCA 1990), was properly decided and provides precedent for our reversal in this case. In Lloyd, the plaintiffs, Mr. and Mrs. Lloyd, underwent genetic testing in 1978 after the birth of a deformed child in order to determine whether the child’s abnormalities were the result of a genetic defect. The complete results of the tests were never communicated to the Lloyds’ physician, and he advised them that their son’s problems were not genetic. In 1983 Mrs. Lloyd gave birth to another son with the same abnormalities. The Lloyds subsequently learned that the 1978 testing had revealed the genetic defect but that that revelation had never been communicated to their physician. The trial court dismissed the Lloyds’ malpractice suit because, although it was filed within two years after the birth of their second son, it was filed more than four years after the date the genetic tests were performed and therefore was barred by the four year statute of repose in section 95.11(4)(b), Florida Statutes, 1989.
On appeal the third district in Lloyd reversed because “[t]he effect of the trial court’s ruling was to hold that the limitation period expired before [the second son] was born. Under that approach, the limitation period expired before the Lloyds had experienced any injury and before they had any awareness of a possible claim.” Id. at 986. Consistent with Lloyd we conclude the terms “incident” and “occurrence” in section 95.11(4)(b) must, under the circumstances of this case, refer to the manifestation of Mr. Nemeth’s symptoms in apparently 1988 and not the 1980 misdiagnosis by defendants. See id. at 987-88. See also Pullum v. Cincinnati, Inc., 476 So.2d 657, 659 n. * (Fla.1985); Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla.1981).
Defendants rely upon Carr v. Broward County, 541 So.2d 92 (Fla.1989). However, we agree with plaintiffs that Carr is distinguishable because the injury to the Carrs’ child was fully evident at the time of the child’s birth, which took place almost 10 years prior to the filing of suit.
Defendants also rely upon a discussion of the repose provision of section 95.11(4)(b), Florida Statutes (1989), contained in University of Miami v. Bogorff, 583 So.2d 1000 (Fla.1991). However, Bogorff is distinguishable for the same reason as is Carr. That is, in Bogorff the plaintiffs were fully aware of the injury to their son within months of the incident of alleged malpractice. In the present case, unlike Bogorff and Carr, the plaintiff was allegedly injured by malpractice but, because of the nature of the alleged malpractice, there was no notice to plaintiff of the injury until eight years after the malpractice occurred.
We disagree with the defendants’ contention to the effect that Mr. Nemeth had notice of the injury when the mole was removed and diagnosed in 1980 and that he should have had further diagnoses before he began to experience symptoms in 1988. He is not shown to have had any reason to do anything other than accept the diagnosis provided by defendants and conclude that he had no malignancy.
As did the third district in Lloyd, 570 So.2d at 990, in interpreting section 95.-ll(4)(b), Florida Statutes (1989), we have passed upon a matter of great public importance. We therefore certify to the supreme court the following question:
DOES THE FOUR YEAR STATUTE OF REPOSE IN SECTION 95.11(4)(B), *74 FLORIDA STATUTES (1989), BAR A MEDICAL MALPRACTICE SUIT IF THE ALLEGED MALPRACTICE OCCURRED MORE THAN FOUR YEARS BEFORE SUIT WAS FILED BUT THE INJURY RESULTING FROM THE ALLEGED MALPRACTICE DID NOT MANIFEST ITSELF WITHIN THE STATUTORY FOUR YEAR PERIOD?
Reversed.
DANAHY, A.C.J., and PATTERSON, J., concur.