DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

STEPHEN A. GAROFALO, LORI GAROFALO, LOUISIANA PARTNERS
FUND, LLC, BATON ROUGE PARTNERS FUND, LLC and NEW
ORLEANS PARTNERS FUND, LLC,
Appellants,

v.

PROSKAUER ROSE LLP,
Appellee.

No. 4D17-2398

[August 1, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm
Beach County; Lisa S. Small, Judge; L.T. Case No.
502016CA007003XXXXMB.

John W. McKenzie, III, W. Ralph Canada, Jr., and Jeven R. Sloan of
Loewinsohn Flegle Deary Simon, LLP, Dallas, Texas, for appellants.

Matthew Triggs of Proskauer Rose LLP, Boca Raton, and David M.
Lederkramer and Elise A. Yablonski of Proskauer Rose LLP, New York, for
appellee.

MAY, J.

The length of time a law firm can be held liable for an alleged fraudulent
tax shelter is challenged in this appeal. The plaintiffs appeal a final order
dismissing their complaint with prejudice based on the fraud statute of
repose. They argue the trial court erred in dismissing the complaint
because the law firm had an ongoing continuing duty to correct
information in its 2002 opinion letter; and its failure to do so was an
ongoing fraudulent omission. We disagree and affirm.

### *Background*

The principal plaintiff[1] was a co-founder of a telecommunications

---

[1] Stephen A. Garofalo was the principal of the companies. He and his wife are
plaintiffs along with the companies.

company that went public in 1997. The company soared to a valuation of $36 billion before declaring bankruptcy during the 2001–2002 market crash. Despite the insolvency, the principal realized a multi-million-dollar capital gain by borrowing against his company's shares before the crash.

After realizing the gain, the principal met with representatives from Arthur Andersen LLP ("Andersen") and Bricolage Capital LLC ("Bricolage"). They pitched an investment strategy (the "Strategy") designed to take "advantage of the tax code and tax laws to generate a completely legal tax loss that could be used to offset [the principal's] ordinary income and/or capital gains." The law firm prepared a letter to serve as an independent opinion on the validity of the Strategy.

The defendant law firm delivered the opinion letter to the plaintiffs on October 8, 2002. The letter confirmed the legitimacy of the Strategy, and assured legal support if there was a dispute with the IRS. Accordingly, the plaintiffs claimed the losses on their tax returns. When the IRS audited the plaintiffs' tax returns, it concluded the Strategy was an abusive tax shelter.

### *The Complaint and Motion to Dismiss*

On June 22, 2016, the plaintiffs filed a complaint alleging Andersen and Bricolage conspired with the law firm to lure them into participating in the Strategy. They claimed the opinion letter was a "fill in the blank boilerplate legal opinion" not specifically related to the plaintiffs' financial situation. The law firm allegedly helped design, develop, market, and implement the Strategy as part of a conspiracy to commit fraud; knowingly provided false information in the opinion letter; and continued its involvement in the conspiracy by withholding material information from the plaintiffs after they filed their tax returns. The plaintiffs alleged the co-conspirators worked together to lure clients to use the Strategy.

The law firm moved to dismiss the complaint based on the fraud statute of repose. In its motion, and at the hearing on the motion, the law firm argued it had no contact with the plaintiffs after delivering the opinion letter on October 8, 2002. The complaint was barred by the statute of repose. The law firm further argued the plaintiffs' "continuing omission theory" would eviscerate the statute of repose because the law firm's duty would continue indefinitely.

The plaintiffs conceded the lack of contact after October 8, 2002, but suggested the law firm should have been in contact with them because it owed them a continuing duty to disclose errors in its opinion and

relationship with the co-conspirators.  They argued the law firm's failure to make corrective disclosures were fraudulent omissions.  As a result, they claimed the repose period should have been measured from the date of the law firm's last fraudulent omission, not the delivery of the opinion letter.

The trial court granted the law firm's motion and dismissed the complaint with prejudice.  From this order, the plaintiffs appeal.

### *The Appeal*

The plaintiffs continue to argue that the dismissal with prejudice was premature and the trial court misapplied the statute of repose.[2]  The law firm responds that the complaint was filed after the statute of repose period expired, and the "continuing omission" theory was an impermissible attempt to toll the statute of repose.

We have *de novo* review of a trial court's application of the statute of repose.  *Inmon v. Air Tractor, Inc.*, 74 So. 3d 534, 537 (Fla. 4th DCA 2011).

"An appellate court must accept the facts alleged in the complaint as true . . . [and a]ll reasonable inferences must be drawn in favor of the pleader."  *Visor v. Buhl*, 760 So. 2d 274, 275 (Fla. 4th DCA 2000).  When the trial court dismisses a complaint based on the statute of repose, "the appellate court's focus is on whether the factual allegations set forth in the complaint and its attachments establish that the claims for relief therein are time barred."  *Busch v. Lennar Homes, LLC*, 219 So. 3d 93, 94 (Fla. 5th DCA 2017).

### *Application of the Fraud Statute of Repose*

The statute of repose is an affirmative defense, which the defendant has the burden of proving.  *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 694-95 (Fla. 2015).  Affirmative defenses are generally raised in an answer. *Grove Isle Ass'n v. Grove Isle Assocs.*, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014).  But, where the facts supporting the defense "affirmatively appear

---

[2] They make three arguments on appeal:  (1) the trial court's dismissal was premature because the pleadings could not support the affirmative defense that the repose statute had run; (2) the court below misapplied the repose statute by ignoring alleged fraudulent omissions that both continued into and first arose during the repose period; and (3) Florida's fraud statute of repose, both facially and as applied by the trial court, is unconstitutional under the Florida Constitution.

on the face of the complaint and establish conclusively that the [defense] bars the action as a matter of law," the issue can be raised in a motion to dismiss. *City of Riviera Beach v. Reed*, 987 So. 2d 168, 170 (Fla. 4th DCA 2008) (citation omitted).

The statute of repose "bar[s] actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished." *Hess*, 175 So. 3d at 695 (citation omitted). Florida's fraud statute of repose provides in part:

> [I]n any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.

§ 95.031(2)(a), Fla. Stat. (2017).

Here, the plaintiffs argue dismissal was improper. They contend the law firm had an ongoing fiduciary relationship with them. And, this continuous fiduciary duty required the law firm to: 1) correct the knowingly false misrepresentations contained in the opinion letter; and 2) inform them of material information pertaining to the Strategy. They allege that by remaining silent, the law firm committed fraud by omission.

The plaintiffs acknowledge that most of the alleged fraudulent acts and omissions are not dated, but suggest at least one omission, the law firm's failure to advise them about a 2005 IRS settlement opportunity, occurred within the statute of repose. In paragraph 72, the plaintiffs allege the law firm and

> Co-Conspirators failed to retract, modify, or qualify in any way their advice and opinions expressed to [the p]laintiffs confirming the propriety of the Investment Strategy. In addition, [the law firm] and the Co-Conspirators failed to advise [p]laintiffs to file a qualified amended return to reverse the Investment Strategy from their 2001 tax return (as well as for later years), which would have prevented the IRS from assessing penalties and substantial interest against [p]laintiffs. **Indeed, [the law firm's] failure to fully disclose its lack of independence prevented [the plaintiffs] from participating in an IRS settlement negotiated by attorneys at the law firm of Mayer Brown. [The principal] had initially elected to join a group of Mayer Brown clients in an IRS settlement in or around 2005, but withdrew**

4

**because [he] was advised [the law firm's] independence supported the legality of the Investment Strategy and that he was therefore in a better position to resolve the matter than Mayer Brown's other clients.** The lost opportunity to participate in this settlement caused [the plaintiffs'] IRS penalties and interest to increase significantly.

The law firm argues this paragraph actually alleges that Mayer Brown, and not the law firm, advised the plaintiffs about the 2005 IRS settlement opportunity. In fact, it's important to note what the complaint failed to allege. It did not allege the law firm:

(1) consulted with the plaintiffs after 2002;

(2) was aware of the 2005 IRS settlement opportunity;

(3) was aware that Mayer Brown relied on the law firm's opinion letter to counsel the plaintiffs; or

(4) knew when the IRS audit occurred.

In *Hess,* our supreme court advised that "[t]he statute of repose may be constitutionally applied to bar claims even when the cause of action does not accrue until after the period of repose has expired." *Hess,* 175 So. 3d at 695 (citation omitted). "Statutes of repose are 'legislative [declarations] . . . [of] an outer limit beyond which claims may not be instituted.'" *Id.* (citation omitted). In short, the statute of repose runs from the date of a discrete act without regard to when the cause of action accrues. *Id.* The defendant's "last act or omission triggers Florida's fraud statute of repose." *Id.* at 698.

In the context of criminal fraud, we have held that "although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does." *de la Osa v. State,* 158 So. 3d 712, 730 (Fla. 4th DCA 2015) (citations omitted); *see also Philip Morris USA, Inc. v. Duignan,* 243 So. 3d 426, 442 (Fla. 2d DCA 2017) ("[S]ilence, unaccompanied by a duty to disclose, is not actionable as fraud.").

Fraud based upon a failure to disclose material information exists only when there is a duty to make such a disclosure. *Friedman v. Am. Guardian Warranty Servs., Inc.,* 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003). "This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or

5

confidence between the two parties." *Id.* "The existence . . . of a duty is a question of law and is appropriate for an appellate court to review." *Gracey v. Eaker*, 837 So. 2d 348, 354 n.7 (Fla. 2002).

The plaintiffs rely upon our decision in *McAbee v. Edwards*, 340 So. 2d 1167, 1170 (Fla. 4th DCA 1976). There, the plaintiff's mother hired a lawyer to draft a will that devised the mother's entire estate to the plaintiff. *Id.* at 1168. After executing the will, the mother married and requested the lawyer to redraft her will to keep her testamentary plan intact. *Id.* The lawyer told the mother it was unnecessary to redraft the will. *Id.* When the mother died, her spouse received a portion of her estate. *Id.* The decedent's daughter sued.

The plaintiffs argue the opinion letter here is analogous to the will in *McAbee*. Just as the will anticipated a death, the opinion letter anticipated an IRS audit. *See id.* And, like *McAbee*, the law firm knew or should have known that the opinion letter would not serve its intended purpose.

However, our holding in *McAbee* was limited to whether the complaint stated a cause of action because the daughter had not hired the lawyer and whether the action was barred by the statute of limitations. The first issue was one of privity. As to the statute of limitations, we held the "factual question [should] not . . . be decided summarily." *Id.* at 1170. The statute of repose was not in play. *McAbee* is therefore not persuasive on the issue here.

The statute of repose runs from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued. *Kush v. Lloyd*, 616 So. 2d 415, 418 (Fla. 1992). As previously noted, the statute of repose is a "valid legislative means to restrict or limit causes of action." *Carr v. Broward Cty.*, 541 So. 2d 92, 95 (Fla. 1989). And, the "[c]ourt is not authorized to second-guess the legislature's judgment." *Kush*, 616 So. 2d at 422.

Nevertheless, the plaintiffs theorize a law firm is burdened with a presumably never-ending duty to make corrective disclosures. Under that theory, the statute of repose would never expire. Such an interpretation subverts the statute's very purpose. *See Hess*, 175 So. 3d at 695.

The law firm drafted the opinion letter, delivered it to the plaintiffs in 2002, and had no further communications with them. The plaintiffs did not inform the law firm about the 2005 IRS settlement opportunity. The time limitation within which to file expired under the fraud statute of repose. The trial court correctly dismissed the plaintiffs' complaint with

prejudice.

### *The Constitutionality of the Fraud Statute of Repose*

Next, the plaintiffs argue Florida's statute of repose is unconstitutional because it prohibits fraud actions before accrual. The law firm responds that Florida courts have upheld various statutes of repose as constitutional even when the cause of action does not accrue until after expiration of the repose period.

We have *de novo* review. *Inmon,* 74 So. 3d at 537.

This issue is easily resolved. In *Damiano v. McDaniel,* 689 So. 2d 1059, 1061 (Fla. 1997), our supreme court held a medical malpractice action was barred by the statute of repose. It has upheld the constitutionality of the statute of repose for both medical malpractice and products liability actions. *See Carr,* 541 So. 2d at 92; *Pullum v. Cincinnati, Inc.,* 476 So. 2d 657, 659 (Fla. 1985).

In *Hess,* our supreme court reminded us that statutes of repose are valid legislative decisions to limit causes of action to balance the rights of the injured person against the exposure of defendants to liability for endless periods of time. *Hess,* 175 So. 3d at 695. This is because "over time 'memories fade, documents are destroyed or lost, and witnesses disappear.'" *Id.* (quoting *Nehme v. Smithkline Beecham Clinical Labs., Inc.,* 863 So. 2d 201, 209 (Fla. 2003)).

The plaintiffs rely on *Kempfer v. St. Johns River Water Mgmt. Dist.,* 475 So. 2d 920, 924 n.14 (Fla. 5th DCA 1985), to suggest that the statute is an unconstitutional bar of access to the courts. However, *Kempfer* predates our supreme court's decisions upholding the constitutionality of the statute of repose in products liability and medical malpractice actions. And, the language in *Kempfer* has been found to be mere dicta. *See Shepard v. Philip Morris Inc.,* No. 96-1720-CIV-T-26B, 1998 WL 34064515, at *5 (M.D. Fla. Apr. 28, 1998) (upholding the constitutionality of Florida's fraud statute of repose and providing that the language in *Kempfer* "is dicta."). The Third District has also upheld the constitutionality of the fraud statute of repose. *See Kish v. A.W. Chesterton Co.,* 930 So. 2d 704, 706 (Fla. 3d DCA 2006).

Although the statute of repose "may cause injustice by eliminating a valid cause of action, [it] address[es] a countervailing concern—that is, the difficulty in defending against a lawsuit many years after the conduct at issue occurred." *Nehme,* 863 So. 2d at 208-09. "[T]he legislature may

properly take into account the difficulties of defending against a stale fraud claim in determining a reasonable period for the statute of repose." *Carr*, 541 So. 2d at 95.

In short, the fraud statute of repose is constitutional.

For the reasons expressed, we affirm the dismissal of the plaintiffs' complaint.[3]

*Affirmed.*

WARNER and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[3] In oral argument the plaintiffs requested that we at least reverse and remand for an opportunity to amend the complaint. This request for relief does not appear in either the initial or reply brief. Nor do we think additional allegations would save this complaint from the statute of repose given the underlying facts.